**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

GERRIT J. VIS,

        Plaintiff,

vs.

AMERICAN FAMILY LIFE
ASSURANCE COMPANY OF
COLUMBUS, a Foreign Corporation,

        Defendant.

No. C 11-4008-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND TO
STAY FURTHER PROCEEDINGS IN
THIS COURT**

---

## TABLE OF CONTENTS

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A.* *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *C.* *Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *1.* *AFLAC's initial arguments* . . . . . . . . . . . . . . . . . . . . . 9
      *2.* *Vis's response* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      *3.* *AFLAC's reply* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   *A.* *The FAA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   *B.* *Arbitrability Under The FAA* . . . . . . . . . . . . . . . . . . . . . . . 14
      *1.* *Arbitrability of the dispute* . . . . . . . . . . . . . . . . . . . . . 15
      *2.* *Validity of the arbitration agreement* . . . . . . . . . . . . . . 15
         *a.* *Contract of adhesion* . . . . . . . . . . . . . . . . . . . . 16
         *b.* *Unconscionability* . . . . . . . . . . . . . . . . . . . . . . . 16
   *C.* *Disposition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Although the parties' arguments have "morphed" somewhat since filing of this breach-of-contract action by a former agent for an insurance company, the essential question now is whether the clause of the contract between the parties requiring arbitration of the present dispute is unconscionable. This case, like the last one in which I addressed a claim that an arbitration clause was unconscionable,[1] suggests that "unconscionability"—like beauty, plain meaning, the line between impermissible patent claim construction and permissible interpretation of the court's construction, fraud, and discriminatory intent—may be in the eye of the beholder.[2]

---

[1] *Faber v. Menard, Inc.*, 267 F. Supp. 2d 961 (N.D. Iowa 2003) (holding that, under Iowa law, an arbitration clause was procedurally unconscionable, where the employee was plainly told that the contract was non-negotiable and that he had to sign it or be replaced, and substantively unconscionable, where it compelled the employee to pay half of the arbitrator's fees and bear his own costs, regardless of whether or not he prevailed), *rev'd*, 367 F.3d 1048 (8th Cir. 2004).

[2] The phrase "beauty is in the eye of the beholder," with variants, has been attributed to the ancient Greeks, Shakespeare, Benjamin Franklin, and David Hume, among others. *See* www.phrases.org.uk/meaning/5911.html; *see also Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 910 (N.D. Iowa 2009) ("In other words, whether a party is asserting a claim construction that is contrary to the court's construction, or only asserting an understanding or interpretation of the court's claim construction with which the other party disagrees, *i.e.*, whether the party has proffered a construction in the 'gray area,' may, like beauty, be in the eye of the beholder."); *United States v. Beiermann*, 584 F. Supp. 2d 1167, 1174 (N.D. Iowa 2008) ("Unfortunately, as this court has also noted, 'plain meaning, like beauty, is sometimes in the eye of the beholder.'" (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985)); *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 824 (N.D. Iowa 2004) ("Perhaps fraud, like beauty, is in the eye of the beholder."); *Bauer v. Metz Baking*
(continued...)

## I.  INTRODUCTION

### A.  Factual Background

This action for breach of contract is before me on a pre-answer motion to compel arbitration.  Therefore, the factual background stated here is drawn from the plaintiff's state court Petition (docket no. 4), which the defendant removed to this federal court, and such further information as the parties' briefing on the motion to compel arbitration has provided.

Plaintiff Gerrit J. Vis, a resident of Sioux County, Iowa, alleges that he had a written contract (the Contract) with defendant American Family Life Assurance Company of Columbus (AFLAC), which he describes as a foreign corporation,[3] pursuant to which he agreed to market AFLAC's insurance services in exchange for commissions for sales of insurance policies to customers.  Vis contends that the contract described him as an "associate."

Vis alleges that his Contract with AFLAC was terminated upon 30-days written notice, but that is not the breach of contract that he alleges in this action.  Rather, he alleges that AFLAC breached the Contract when it stopped paying him renewal commissions to which he was entitled under the Contract, even after his termination. AFLAC explains, at least for purposes of its present Motion To Compel Arbitration, that it ceased paying Vis renewal commissions, because it determined that Vis had attempted

---

[2](…continued)
*Co.*, 59 F. Supp. 2d 896, 897 (N.D. Iowa 1999) ("Perhaps like beauty, discriminatory intent is in the eye of the beholder.").

[3]AFLAC states in its Notice Of Removal (docket no. 2) that it is a corporation incorporated under the laws of the State of Nebraska with its principal place of business in the State of Georgia.

to solicit or induce policyholders or accounts of AFLAC to relinquish, cancel, or surrender policies with AFLAC and encouraged them to replace them with policies issued by Colonial Life, the company with which Vis was still affiliated after his termination by AFLAC. AFLAC describes Vis's conduct as "twisting," which is prohibited by Iowa Code § 507B.4. AFLAC contends that such conduct forfeited Vis's right to renewal commissions pursuant to the Contract.[4]

Vis acknowledges in his Petition that the Contract with AFLAC included an arbitration clause, requiring that all disputes concerning the Contract, including claims of breach of contract, are subject to mandatory and binding arbitration. He alleges, however, that the arbitration clause is unenforceable.

More specifically, the Contract provides for arbitration as follows:

> **10.1 Arbitration Agreement.** *Except for an action by AFLAC to enforce the provisions contained in Paragraphs 1.4, 3, 8, 10.5 or 10.6, the parties agree that any dispute arising under or related in any way to this Agreement ("Dispute"), to the maximum extent allowed under the Federal Arbitration Act ("FAA"), shall be subject to mandatory and binding arbitration.* [Sic] Including any Dispute arising under federal, state or local laws, statutes or ordinances (for example, statutes prohibiting anticompetitive conduct, unfair business practices and discrimination or harassment on the basis of race, sex, religion, color, national origin, age or disability) or arising under federal or state common law (for example, *claims of breach of contract*, fraud, negligence, emotional distress or breach of fiduciary duty). It is further agreed that, in any Dispute between the parties, all past and present officers, stockholders, employees, associates, coordinators, agents and

---

[4]Of course, the merits of Vis's breach-of-contract claim are not at issue in this ruling. The parties' contentions regarding that claim are presented only for the purpose of providing adequate background to AFLAC's Motion To Compel Arbitration.

> brokers of AFLAC, who are alleged to be liable or may be liable in any manner to either party based upon the same allegations made against a party to this Agreement, are intended to be third-party beneficiaries of this Arbitration Agreement with full rights to enforce it. Associate also understands and agrees that, regardless of whether AFLAC is a party, this Arbitration Agreement shall be applicable to any dispute between Associate and any past and present officers, stockholders, employees, associates, coordinators, agents and brokers of AFLAC. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY A JURY IN A COURT OF LAW TO RESOLVE ANY DISPUTE.

Defendant's Motion To Compel Arbitration, Exhibit C (docket no. 6-3) (Contract), ¶ 10.1 (emphasis added).[5] Further subparagraphs of the arbitration clause establish the arbitration procedure (¶ 10.2), allow enforcement of the arbitration agreement in any court of competent jurisdiction (¶ 10.3), prohibit consolidation of claims or class actions without the consent of all parties (¶ 10.4), and set out a limitation of liability (¶ 10.7).

Two other provisions of the arbitration clause warrant quotation here, in light of the parties' arguments, because both are listed in ¶ 10.1 as paragraphs that AFLAC may enforce by court action. The first is the provision providing for injunctive relief:

> **10.5 Injunctive Relief.** Any court of competent jurisdiction is authorized to issue any injunctive or other equitable relief in aid of arbitration, including without limitation a temporary restraining order or preliminary injunction enjoining Associate from violating Paragraphs 1.4, 3, 8, 10.5 or 10.6.

---

[5]The Contract was not attached to Vis's state-court Petition. It is available in the present record only because it was attached to AFLAC's Motion To Compel Arbitration.

Contract, ¶ 10.5. This authority to pursue injunctive relief in court relates to precisely the same paragraphs of the Contract as the exception from AFLAC's obligation to arbitrate disputes in ¶ 10.1 of the arbitration clause.

The second provision of the arbitration clause that warrants quotation, because it is also a paragraph that AFLAC may enforce in a court action, is a covenant not to sue:

> **10.6    Covenant Not to Sue**: Associate covenants and agrees that he/she shall not, directly or indirectly, assert or threaten to assert any claim, charge, action or cause of action (hereinafter "Claim") against (a) an Account or Prospective Account (Which is defined as any individual or entity that Associate ever solicited for the purposes of selling an AFLAC Policy or product), including all of the Account's or Prospective Account's past and present officers, trustees, directors, stockholders, employees, agents, partners and attorneys, or (b) a policy holder, which relates in any way to Associate's communications, dealings or relationship with the Account, Prospective Account or policy holder. Nothing contained in this Paragraph 10.6 shall prohibit Associate from asserting a claim against an Account or Prospective Account (including all of the entities or individuals described herein) or policy holder for a matter that is completely unrelated to AFLAC or Associate's representation of AFLAC. Moreover, in the event that an Account or Prospective Account (including any of the entities or individuals described herein) or policyholder should assert a claim against Associate, Associate shall be free to assert any counterclaim against the Account or Prospective Account (including all of the entities or individuals described herein) or policyholder. Associate acknowledges that this covenant not to sue is for the benefit of Accounts or Prospective Accounts (including any of the entities or individuals described herein) and policyholders and, in addition, for AFLAC in connection with its relationship with its Accounts, Prospective Accounts and policyholders. Associate further acknowledges that this covenant not to sue is

> an integral part of this Agreement and is supported by valuable consideration.

Contract, ¶ 10.6. Thus, this provision prohibits third-party legal proceedings by an associate without AFLAC's consent, unless the matter is completely unrelated to AFLAC or the associate's representation of AFLAC or is a counterclaim by the associate in an action by a third party against the associate.

Parts of other provisions of the Contract excepted from AFLAC's obligation to pursue arbitration also warrant closer examination. Specifically, ¶ 1.4.4 of the Contract, a subparagraph of the provision relating to AFLAC's intellectual property, ¶ 1.4, provides as follows:

> **1.4.4 Revocation, Expiration or Termination.** Upon the revocation of Associate's limited license to use AFLAC's Marks or the Materials or the termination of this Agreement, Associate shall immediately cease all further use of the AFLAC Marks and the Materials in any manner. *Associate agrees that any breach or threatened breach of this Paragraph 1.4.4 would cause irreparable harm to AFLAC and that money damages would not provide an adequate remedy to AFLAC for the injury. Associate therefore consents to the entry of immediate injunctive relief against it in a court of competent jurisdiction in the event Associate breaches or threatens to breach this Paragraph 1.4.4 in any manner.*

Contract, ¶ 1.4.4 (emphasis added).

Paragraph 8.5.1 of the Contract, a subparagraph of the provision relating to restricted conduct, ¶ 8, provides as follows:

> **8.5.1 Rights and Remedies Upon Breach.** In the event Associate breaches or threatens to commit a breach of any of the covenants of this Paragraph 8, *AFLAC shall*

> *have the right and remedy to enjoin, preliminarily and permanently, Associate from violating or threatening to violate the covenants contained in this Paragraph 8 and to have the covenants specifically enforced in any court of competent jurisdiction, it being agreed that any breach or threatened breach of this Paragraph 8 would cause irreparable injury to AFLAC and that money damages would not provide an adequate remedy to AFLAC.* Such right and remedy shall be independent of any others and severally enforceable and shall be in addition to, and not in lieu of, any other rights and remedy available to AFLAC at law or in equity or arbitration.

Contract, ¶ 8.5.1 (emphasis added).

The last excepted paragraph not already quoted is ¶ 3, which pertains to confidential and protected information. This paragraph consists of subparagraphs defining "confidential information" (¶ 3.1.1), requiring protection of confidential information (¶ 3.1.2), defining "protected information" (¶ 3.2.1), requiring confidentiality of protected information (¶ 3.2.2), and requiring return of confidential and protected information upon request of AFLAC or termination of the Contract (¶ 3.3). This paragraph does not contain a separate, specific authorization for an action in a court of competent jurisdiction for injunctive relief to enforce it.

## B. *Procedural Background*

On January 12, 2011, Vis filed a Petition At Law And Demand For Jury Trial in the Iowa District Court for Sioux County. *See* Defendant's Notice Of Removal (docket no. 2), Exhibit B; State Court Petition (docket no. 4). Count I of Vis's Petition sought declaratory relief to the effect that the Contract is a contract of adhesion, so that its arbitration clause is unenforceable pursuant to IOWA CODE § 679A.1. Count II seeks

money damages for breach of contract for AFLAC's failure to pay renewal commissions after Vis's termination.

On January 25, 2011, AFLAC filed a Notice Of Removal (docket no. 2), removing this action to this federal court on the basis of diversity of citizenship. On February 7, 2011, AFLAC filed its Motion To Compel Arbitration And To Stay Further Proceedings In This Court (docket no. 6), which is now before me. On February 24, 2011, Vis filed his Resistance To Motion To Compel Arbitration And To Stay Further Proceedings In This Court (docket no. 8). On March 14, 2011, AFLAC filed its Reply Brief To Plaintiff's Resistance To Defendant's Motion To Compel Arbitration (docket no. 13). Neither party requested oral arguments on the Motion To Compel Arbitration in the manner required by applicable local rules. Therefore, I have considered the Motion on the basis of the parties' written submissions.

## C.  Arguments Of The Parties

### 1.  AFLAC's initial arguments

AFLAC asks the court to compel Vis to submit his claims in this dispute to mandatory and binding arbitration, to the maximum extent allowed under the Federal Arbitration Act (FAA), and to stay this action pending that arbitration proceeding. In its initial arguments in support of such relief, AFLAC pointed out that Vis admits in his Petition that his contract dispute is subject to mandatory and binding arbitration, but seeks to avoid arbitration on the ground that the Contract is a contract of adhesion and, thus, falls within an exception to arbitrable agreements in IOWA CODE § 679A.1. AFLAC argued, however, that even a contract of adhesion is subject to arbitration under the FAA, because contrary provisions of Iowa law are preempted by the FAA. AFLAC also anticipated that Vis might argue that the Contract falls within the "employment

agreements" exception under IOWA CODE § 679A.1, but that the Eighth Circuit Court of Appeals has held that Iowa employment contracts are still subject to arbitration under the FAA. AFLAC argued that a number of courts have upheld arbitration provisions similar to the one in AFLAC's Contract.

AFLAC also argued that the FAA requires courts to stay the trial and compel arbitration of any matter subject to a valid arbitration agreement. AFLAC argued that it is not in default in proceeding with such arbitration, because it has not filed any papers in either state or federal court other than its Notice Of Removal and papers relating to its Motion To Compel Arbitration.

In short, AFLAC argued that Vis's claims against it are subject to a valid arbitration agreement and that Vis must be compelled to arbitration.

### 2. *Vis's response*

Although Vis alleged in his Petition that the arbitration clause is unenforceable simply because the Contract is a contract of adhesion, pursuant to IOWA CODE § 679A.1, he takes a different tack in his Response To AFLAC's Motion To Compel Arbitration. He now acknowledges that the fact that a contract is one of adhesion is not enough, standing alone, to make the arbitration provisions unenforceable, but he nevertheless argues that it is still a very important fact, because it influences the way in which courts approach the analysis of whether an arbitration provision is unconscionable. He argues that, because of the adhesive nature of the Contract, the court must carefully scrutinize the arbitration provision at issue to avoid enforcing an unconscionable clause. It is the asserted unconscionability of the arbitration provision, however, that is now the central theme of Vis's resistance to arbitration.

As to factors that Iowa courts consider to determine unconscionability, Vis contends that disparity of bargaining power and substantive unfairness are determinative here. He

points to the substantial difference in bargaining power between an insurance agent, in a small office in a small town in Iowa, and AFLAC, an international corporation traded on the New York Stock Exchange with cash and investments totaling billions of dollars. As to substantive unfairness, Vis argues that there is an unconscionable lack of mutuality between what he must arbitrate—any and all disputes with AFLAC—and what AFLAC is not required to arbitrate pursuant to specific exceptions in the arbitration clause. He contends that AFLAC may make recourse to the courts pursuant to these exceptions to seek equitable remedies and money damages, while he is stuck with arbitration. He contends that, unless both parties are bound, neither is bound. He points out that, in *Nangrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), the Ninth Circuit Court of Appeals found that the lack of mutuality supported a finding of substantive unconscionability under California law. He argues that the court should strike the arbitration provision as unconscionable and permit him to proceed on his claim of breach of contract in this court.

### 3.    *AFLAC's reply*

In light of Vis's shift from an argument based on the adhesive nature of the Contract to unconscionability of the Contract, AFLAC also shifts its ground. AFLAC abandons its argument that Vis's grounds for finding that the arbitration clause is unenforceable are preempted by federal law and also reframes its argument to be that the arbitration clause is not procedurally or substantively unconscionable.

AFLAC argues that it is "ironic" that Vis is challenging the arbitration provisions of the Contract as unconscionable, because they are substantially similar to the arbitration provisions found in his agent's contract with Colonial Life, the company with which Vis is still affiliated. Turning to more substantive arguments, AFLAC contends that only Vis's self-serving statements support his contention that the Contract is one of adhesion. AFLAC points out that Vis does not specifically allege that he was presented with the

11

Contract on a "take-it-or-leave-it" basis, but even if he had been, the allegation that the Contract is one of adhesion does not automatically make it or the arbitration clause within it unconscionable. While AFLAC admits that it has greater financial resources and bargaining power than Vis does, it nevertheless argues that Vis appears to have substantial financial resources from his associations with other companies and that Vis does not claim that he is unable to afford the arbitration fees. More importantly, AFLAC argues, Vis comes and goes with companies with some frequency, so that AFLAC's offer of the Contract on a "take-it-or-leave-it" basis simply is not a credible basis for finding that Vis was compelled to accept the Contract.

AFLAC also contends that Vis has overstated the supposed lack of mutuality and substantive unfairness of the arbitration clause in the Contract. AFLAC points out that each of the exceptions to AFLAC's obligation to arbitrate is limited, either expressly or implicitly, to the ability to seek injunctive relief in court to forestall immediate, irreparable harm; AFLAC contends that it has no more ability to pursue claims for money damages in court than Vis does. As to the restriction on Vis's right to sue, AFLAC points out that Vis is only restricted from suing his accounts over AFLAC matters, without permission, but he is free to sue on other grounds. AFLAC contends that, when read as a whole and in the context of the entire contract, the arbitration provisions are rational and relatively even-handed. In the alternative, AFLAC suggests that the court could simply sever the exceptions to AFLAC's obligation to arbitrate, if the court finds them to be unconscionable, without affecting the validity of the rest of the agreement. Indeed, AFLAC points out that ¶ 8.5.2 of the Contract contains a "severability" clause.

AFLAC also argues that, to the extent that Vis is arguing that the Contract as a whole is unenforceable, as a contract of adhesion, such an attack is the province of the

arbitrator, not the court.  Thus, AFLAC contends that such a claim must also go to arbitration.

## II. LEGAL ANALYSIS

### A. The FAA

As the Eighth Circuit Court of Appeals recently explained,

> Under the Federal Arbitration Act, a written arbitration agreement such as the one at issue here "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 reflects congressional intent "to overcome judicial hostility to arbitration agreements."  *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).  But it also "gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision," if the contract violates state law.  *Id.* at 281, 115 S. Ct. 834.  "What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause."  *Id.* Doubts are resolved in favor of arbitrability.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).  But general contract defenses, such as unconscionability, "may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

*Cicle v. Chase Bank USA*, 583 F.3d 549, 553-54 (8th Cir. 2009).

As the Eighth Circuit Court of Appeals has also explained,

> The Federal Arbitration Act (FAA), 9 U.S.C. § 4, provides that a party aggrieved by the failure of another party to arbitrate under a written agreement may petition the district

court for an order compelling arbitration. The purpose of the FAA is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). To effectuate that goal, Congress provided a limited role for courts, allowing them to "consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). These issues are presumptively committed to judicial determination, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

*Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008).


## B. Arbitrability Under The FAA

More specifically, "[t]o decide questions of arbitrability, [courts] must determine whether a valid arbitration agreement exists between the parties and, if so, whether the subject matter of the dispute falls within the scope of the arbitration clause." *Id.* (citing *United Steelworkers, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000)); *EEOC v. Woodmen of World Life Ins. Soc'y*, 479 F.3d 561, 565 (8th Cir. 2007) ("In addressing a motion to compel arbitration then, courts generally 'ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.'" (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)).

### 1.     *Arbitrability of the dispute*

Here, the second question of arbitrability is not at issue, because the parties do not dispute that Vis's breach-of-contract claim falls squarely within the scope of the arbitration clause in the Contract.  *See* Contract, § 10.1 (describing arbitrable disputes as including "claims of breach of contract").  Thus, the only question here is whether a valid arbitration agreement exists between the parties.  *Id.*

### 2.     *Validity of the arbitration agreement*

It is in the context of validity of the arbitration agreement that "general contract defenses, such as unconscionability, 'may be applied to invalidate arbitration agreements without contravening § 2.'"  *Cicle*, 583 F.3d at 554 (quoting *Doctor's Assocs., Inc.*, 517 U.S. at 687).  These "general contract defenses" arise under state law.  *See Pheasants v. American Exp. Co.*, 541 F.3d 853, 857 (8th Cir. 2008) (stating, "State-law contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements, *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (emphasis in the original; internal quotations and citations omitted)); *accord Cicle*, 583 F.3d at 554 (noting that arbitration provisions may be invalidated if the contract violates state law, so long as the state law does not make invalidity applicable only to arbitration clauses); *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731-32 (8th Cir. 2009) (noting that, "'when deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts'" (quoting *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007), in turn quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Woodmen of World Life Ins. Soc'y*, 479 F.3d at 565 ("The validity of the arbitration agreement is determined by state contract law.").

### a.    Contract of adhesion

As Vis initially asserted, IOWA CODE § 679A.1(2)(a) does except an arbitration clause in "a contract of adhesion" from its general pronouncement that agreements to submit any future controversy to arbitration are valid and enforceable.  However, because the statute applies specifically to arbitration agreements, not to contracts generally, it is precisely the kind of state law that is preempted by the FAA.  *Cicle*, 583 F.3d at 554; *see also Heaberlin Farms, Inc. v. IGF Ins. Co.*, 641 N.W.2d 816, 819 (Iowa 2002) ("The FAA does not exclude adhesion contracts.  The Iowa statute [IOWA CODE § 679A.1], by excluding adhesion contracts, is in conflict with the FAA.  Thus, if the federal act is applicable, it preempts the Iowa statute by operation of the Supremacy Clause.").

Vis's retrenched argument is that, even though an arbitration agreement in a contract of adhesion is not unenforceable on that ground alone, under Iowa law, contracts of adhesion "'are carefully scrutinized by the courts for the purpose of avoiding enforcement of "unconscionable" clauses."  *Hofmeyer v. Iowa Dist. Court for Fayette County*, 640 N.W.2d 225, 230 (Iowa 2001) (quoting *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 180 (Iowa 1975), in turn quoting 6 A. CORBIN, CORBIN ON CONTRACTS § 1376, at 21 (1963)).  I will assume, for the sake of argument, that Vis's contract with AFLAC was a contract of adhesion, although AFLAC disputes that point, and give the conscionability of the Contract careful scrutiny.

### b.    Unconscionability

As the Eighth Circuit Court of Appeals explained in *Faber*,

> Under Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable.  *In re Estate of Ascherl,* 445 N.W.2d 391, 392 (Iowa Ct. App. 1989).  The Iowa Supreme Court has established that we should analyze the following

> factors of unconscionability: (1) assent; (2) unfair surprise; (3) notice; (4) disparity of bargaining power; and (5) substantive unfairness. *Home Federal Sav. & Loan Ass'n v. Campney,* 357 N.W.2d 613, 618 (Iowa 1984). The ultimate conclusion of whether a provision is unconscionable is to be made "in view of all the circumstances." *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.,* 227 N.W.2d 169, 181 (Iowa 1975). A bargain is substantively unfair and therefore unconscionable "if it is such as no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other." *Home Federal,* 357 N.W.2d at 619-20. A provision will be invalidated if it is a "nefarious provision, inimical to the public good." *Id.* at 618.

*Faber,* 367 F.3d at 1053. As noted above, Vis relies on only two of the factors identified by Iowa courts as relevant to the unconscionability analysis, disparity of bargaining power and substantive unfairness, as demonstrating that the arbitration clause in his Contract is unconscionable.

AFLAC concedes, as it must, that there is no question that it had the superior bargaining power in its relationship with Vis. However, AFLAC points out that, in *Faber,* the Eighth Circuit Court of Appeals stated that "[m]ere inequality of bargaining power does not make the contract automatically unconscionable." *Id.* at 1053. What AFLAC does not point out is that the Eighth Circuit Court of Appeals also held that the unquestionable disparity in bargaining power between a large national company and an individual employee *also* "calls for careful scrutiny of the substance of the contract." *Id.* Thus, both because I will assume that the Contract is one of adhesion and because there is unquestionably a disparity of bargaining power between the parties, I must give "careful scrutiny" to the alleged substantive unfairness of the Contract's arbitration provisions.

Even applying such careful scrutiny, however, I cannot find that the arbitration clause of the Contract is so substantively unfair as to require me to refuse to enforce it. The arbitration clause here is a long way from one that "no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other," nor is it "nefarious" or "inimical to the public good." *Faber*, 367 F.3d at 1053 (defining substantive unfairness); *see also C & J Vantage Leasing Co. v. Wolfe*, ___ N.W.2d ___, ___, 2011 WL 744633 (Iowa March 4, 2011) ("Substantive unconscionability involves whether or not the substantive terms of the agreement are so harsh or oppressive that no person in his or her right senses would make it."). This is so, primarily, because the exceptions to arbitration of claims *by AFLAC* is not so one-sided or extensive as Vis contends.

Specifically, careful scrutiny of the Contract shows that ¶ 10.1, which is quoted in its entirety above, does not except from arbitration an action by AFLAC on "any dispute" arising under the listed paragraphs (1.4, 3, 8, 10.5, and 10.6), but only an action by AFLAC "to enforce" those provisions. Contract, ¶ 10.1. The nature of the action "to enforce" some of these excepted provisions (¶¶ 1.4, 8, and 10.5) is plainly set out in certain subparagraphs of those provisions, quoted in their entirety above. *See* Contract, ¶ 1.4.4 (authorizing an action in a court of competent jurisdiction for "immediate injunctive relief" to prevent any breach or threatened breach of ¶ 1.4.4 requiring protection of AFLAC's intellectual property); *id.* at ¶ 8.5.1 ("AFLAC shall have *the right and remedy to enjoin, preliminarily and permanently*, Associate from violating or threatening to violate the covenants contained in this Paragraph 8 *and to have the covenants specifically enforced in any court of competent jurisdiction*, it being agreed that any breach or threatened breach of this Paragraph 8 would cause irreparable injury to AFLAC and that money damages would not provide an adequate remedy to

AFLAC"(emphasis added)); *see also id.*, § 10.3 (providing, in part, *"Any party* may seek an order of any court of competent jurisdiction *to enforce* this Arbitration Agreement." (emphasis added)). None of these provisions expressly authorizes recourse to the courts for money damages. Only an action in a court of competent jurisdiction, not an arbitration proceeding, is capable of providing the immediate injunctive relief necessary to prevent irreparable harm that might arise from violations of these provisions. Similarly, ¶ 3, regarding confidential and protected information, and ¶ 10.6, regarding a covenant not to sue, which do not include express statements of the enforcement actions that AFLAC may pursue in a court of competent jurisdiction, nevertheless involve circumstances in which only the immediacy of injunctive relief in a court of competent jurisdiction could reasonably protect AFLAC from irreparable harm. Thus, what is plainly excepted from AFLAC's obligation to arbitrate in ¶ 10.1 are the claims for injunctive relief from a court of competent jurisdiction expressly authorized in ¶¶ 1.4, 8, and 10.5, and claims for injunctive relief implicitly required to protect rights in ¶¶ 3 and 10.6. Arbitration of disputes under each of these paragraphs, in the absence of injunctive relief to prevent breaches or threatened breaches of these provisions, would be an empty gesture, as the damage would be done before any arbitral award could provide even the inadequate remedy of money damages. Indeed, read in conjunction, ¶ 10.5, which authorizes any court of competent jurisdiction only "to issue any injunctive or other equitable relief in aid of arbitration" *as to each of the excepted paragraphs*, clarifies the distinction in ¶ 10.1 between an action "to enforce" those provisions and an action on "any dispute" arising under the Contract. Thus, taken as a whole, I do not read the exceptions to arbitration for "an action by AFLAC to enforce the provisions contained in Paragraphs 1.4, 3, 8, 10.5 or 10.6" to authorize AFLAC to pursue a claim for money damages for violations of the listed paragraphs or to litigate "any disputes" under those paragraphs in a court rather than

in arbitration proceedings, but only to pursue injunctive and other equitable relief in court in aid of arbitration.

For these reasons, I conclude that it was neither unfair nor dishonest for AFLAC to impose such exceptions nor would a person in Vis's position as an associate have been out of his senses or delusional to accept them. *Faber*, 367 F.3d at 1053. Indeed, the public good is generally understood to favor protection of such things as intellectual property rights and rights in confidential or protected information. *Id.* The arbitration clause of the Contract is valid and enforceable.

### C. Disposition

Once the court determines that an arbitration agreement is valid and that the dispute in question falls within the scope of that arbitration agreement, § 4 of the FAA "[b]y its terms . . . 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Pro Tech Indus., Inc., v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985), with emphasis in the original).[6] Moreover, "[w]here arbitration is required by § 4 of the FAA, § 3 requires that the court stay the court proceedings upon application of one of the parties." *Madol v. Dan Nelson Automotive*

---

[6]Section 4 of the FAA provides, in pertinent part, "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

*Group*, 372 F.3d 997, 998 (8th Cir. 2004).[7] Vis has not suggested or shown that AFLAC

is in default in proceeding with arbitration, *see* 9 U.S.C. § 3, nor could I so find, where

AFLAC's only actions in the court proceedings in either state or federal court has been to

remove the action to federal court and to seek to compel arbitration. Therefore, I must not

only compel the parties to proceed to arbitration in accordance with the terms of the

agreement, but I must also stay the trial of this action until such arbitration has been had

in accordance with the terms of the agreement.


### III.  CONCLUSION

Upon the foregoing, defendant AFLAC's February 7, 2011, Motion To Compel

Arbitration And To Stay Further Proceedings In This Court (docket no. 6) is **granted**, as

follows:

---

[7]Section 3 of the FAA provides as follows:

> **§ 3. Stay of proceedings where issue therein referable to arbitration**
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

1.     The parties are directed to proceed to arbitration of Vis's claim of breach of contract in accordance with the terms of the arbitration clause of the Contract between them, pursuant to 9 U.S.C. § 4; and

2.     These court proceedings are **stayed** until such arbitration has been had in accordance with the terms of the agreement, pursuant to 9 U.S.C. § 3.

3.     The parties shall file, jointly or separately, **status reports** on the status of the arbitration proceedings and the need, if any, for further proceedings in this court **not less than thirty days** from the date of this order and not less than every thirty days thereafter.

**IT IS SO ORDERED.**

**DATED** this 21st day of April, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA